# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 1:18CR00023-002 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHELLE RENEE BOARDWINE,** | ) | By:  James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*M. Suzanne Kerney-Quillen, Special Assistant United States Attorney, Abingdon, Virginia, for United States; Michelle Renee Boardwine, Pro Se Defendant.*

The defendant, proceeding pro se, has filed a motion seeking relief under 28 U.S.C. § 2255.  The United States has filed a motion to dismiss, to which the movant has responded.  For the reasons stated, I will grant the motion to dismiss and dismiss the § 2255 motion.

After pleading guilty, the defendant was sentenced by this court on August 15, 2019, to a total term of 168 months imprisonment, consisting of 168 months each on Counts One, Three, and Twenty of the Indictment, all to be served concurrently. Count One charged the defendant with conspiring to distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii), and 846.  Count Three charged Boardwine with distributing and

possessing with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii).  Count Twenty charged the defendant with distributing methamphetamine within one thousand feet of an elementary, vocational, or secondary school, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), (b)(1)(c) and 860.

In her § 2255 motion, the defendant contends that her counsel[1] was ineffective in failing to request a role reduction in the calculation of her guidelines range.  The government responds that because Boardwine stipulated to a four-point organizer or leader enhancement in her plea agreement, her claim is in essence an attack on her guilty plea.  Therefore, according to the government, Boardwine's claim is not truly a claim of ineffective assistance of counsel, and it has been waived.  The government further argues that Boardwine has failed to show that her counsel's performance was defective or that she was prejudiced by any error or omission of her counsel.

To state a viable claim for relief under § 2255, a defendant must prove: (1) that her sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such sentence"; or (3)

---

[1]  The attorney who represented Boardwine at her guilty plea hearing, Barry Proctor, died unexpectedly after preparation of the presentence investigation report ("PSR") but prior to sentencing.  Boardwine asserts that she did not meet her new attorney, Brian Ely, until a week before her sentencing hearing.  Neither attorney filed objections to the PSR.

that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).  The movant bears the burden of proving grounds for a collateral attack by a preponderance of the evidence.  *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

Criminal defendants have a Sixth Amendment right to effective legal assistance.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Ineffective assistance claims, however, are not lightly granted — "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  *Id.* at 686.  To that end, a defendant must satisfy a two-prong analysis showing both that counsel's performance fell below an objective standard of reasonableness and that the defendant was prejudiced by counsel's alleged deficient performance.  *Id.* at 687.  To satisfy the prejudice prong of *Strickland*, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different.  *Id.* at 694.

In her plea agreement, Boardwine waived the right to collaterally attack her sentence, except for a claim of ineffective assistance of counsel.  Plea Agreement 10, ECF No. 76.  I explained this provision to her during her change of plea hearing, and she confirmed that she understood it.  Change of Plea Hr'g Tr. 25, ECF No. 172.

Boardwine's plea agreement contains the following Stipulation of Facts:

In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

a.  Through the testimony of witnesses, including law enforcement officers, the United States would demonstrate, beyond a reasonable doubt, that from on or about September 10, 2015, through on or about November 18, 2016, in the Western District of Virginia and elsewhere, the defendant did knowingly, intentionally, and unlawfully conspire to distribute, possess with the intent to distribute, and actually distribute methamphetamine, a Schedule II controlled substance. The defendant admits that she led or organized this conspiracy involving five or more individuals who distributed controlled substances in the Western District of Virginia.

b.  Evidence from records, law enforcement surveillance, undercover transactions involving law enforcement undercover agents, and statements of the defendant and others would demonstrate that the defendant conspired with co-defendants and others to distribute and possess with the intent to distribute methamphetamine in the Western District of Virginia on each of the following dates:

    a.  April 28, 2016, 0.96 grams methamphetamine
    b.  August 19, 2016, 0.93 grams methamphetamine
    c.  August 21, 2016, 0.69 grams methamphetamine
    d.  August 24, 2016, 0.81 grams methamphetamine
    e.  August 26, 2016, 0.87 grams methamphetamine
    f.  August 30, 2016, 0.81 grams methamphetamine
    g.  September 13, 2016, 0.71 grams methamphetamine
    h.  September 16, 2016, 0.87 grams methamphetamine
    i.  September 23, 2016, 0.65 grams methamphetamine (distribution occurred within 1,000 feet of Glad Spring Middle School)
    j.  December 15, 2016, 0.59 grams methamphetamine

k. December 16, 2016, 132.23 grams of methylsulfonylmethane (MSM), distributed by the defendant as methamphetamine

l. January 30, 2017, 0.97 grams methamphetamine

m. November 30, 2017, 0.37 grams methamphetamine

c. On October 11, 2016, the defendant was arrested. A search of her vehicle revealed 0.17 grams of methamphetamine. The defendant admits that she possessed these controlled substances with the intent to distribute on this date.

d. The defendant admits she acquired methamphetamine in multiple ounce quantities from numerous sources during the time period of the conspiracy. The defendant acquired the methamphetamine to distribute. The defendant admits she utilized multiple sources of supply and that she and/or co-defendant Olinger traveled out of state to obtain methamphetamine to distribute.

e. Law enforcement interviews of numerous witnesses revealed the defendant and codefendant Olinger personally distributed methamphetamine during the course of this conspiracy. These interviews further revealed that the defendant and codefendant Olinger utilized others to distribute methamphetamine on their behalf.

f. Upon her arrest on January 30, 2017, the defendant had concealed on her person at the Southwest Virginia Regional Jail 0.36 grams of methamphetamine and two oxycodone tablets. The defendant admits that she possessed these controlled substances with the intent to distribute on this date.

g. In total, the defendant admits that she is responsible for conspiring to distribute, possessing with the intent to distribute, and actually distributing, conservatively, at least 1.5 kilograms but less than 5 kilograms of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers.

Plea Agreement 3–4, ECF No. 76. Boardwine did not dispute these facts at her change of plea hearing. Change of Plea Hr'g Tr. 34, ECF No. 172.

Boardwine further stipulated that § 3B1.1 of the U.S. Sentencing Guidelines Manual, 2018 edition, applied to her conduct. Plea Agreement 5, ECF No. 76. The plea agreement indicated that the application of that guidelines provision would add four points to her offense level and expressly stated, "defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." *Id.* The prosecutor highlighted this provision of the plea agreement during Boardwine's change of plea hearing. Change of Plea Hr'g Tr. 19, ECF No. 172.

Because Boardwine ostensibly raises a claim of ineffective assistance of counsel based on her attorneys' decision not to seek a role reduction, I find that her claim falls outside of the collateral attack waiver contained in her plea agreement. I agree with the government, however, that Boardwine can show neither an unprofessional error by her counsel or resulting prejudice as required by *Strickland*.

Absent extraordinary circumstances, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (internal

quotation marks omitted). The statements Boardwine makes in her § 2255 motion plainly contradict those she made under oath during her change of plea hearing.

During the hearing, Boardwine stated that she had signed and initialed her plea agreement to show that she had read it, and that she had had an adequate opportunity to discuss it with her lawyer. Change of Plea Hr'g Tr. 12–13, ECF No. 172. She stated that she was fully satisfied with her attorney's representation. *Id.* at 13. The prosecutor summarized the stipulation of facts contained in the plea agreement, as well as the stipulation that USSG § 3B1.1 applied because Boardwine was an organizer or leader. *Id.* at 19. She listened to this recitation and then said that the terms just stated were included in her plea agreement as she understood it. *Id.* at 24. She indicated that no one had made any promise to her that caused her to want to plead guilty. *Id.* at 25. I find that any contrary statements made in support of her § 2255 motion are not credible.

Boardwine's allocution at sentencing further undermines the credibility of her assertion that her attorney should have sought a role reduction. At the beginning of the sentencing hearing, I asked Boardwine if she had read and discussed the PSR with her lawyer. She said that she had. Sent'g Hr'g Tr. 2, ECF No. 171. The PSR discussed the stipulated application of § 3B1.1(a) and added four points to the adjusted offense level due to Boardwine's role as an organizer or leader of a criminal activity involving five or more people. PSR 4, 6, ECF No. 127. She listened to the

court say that there were no objections to the PSR or its calculation of her guidelines range, and to my finding of the total offense level.  Sent'g Hr'g Tr. 2, ECF No. 171. She listened to the prosecutor summarize her conduct related to this case.  *Id.* at 7–11.  She listened as her attorney requested a mandatory minimum sentence of 120 months, which was below the applicable guidelines range of 135 to 168 months, without disputing the prosecutor's statement of the facts concerning her extensive involvement in the conspiracy.  *Id.* at 11–12.  In her allocution, she raised no concerns about the role enhancement to which she had agreed, nor did she contest any of the facts that had been stated.  *Id.* at 12.

The facts to which Boardwine stipulated in her plea agreement clearly support the application of § 3B1.1.  Given that she had agreed to the application of that guidelines provision in her plea agreement, I find that a reasonable attorney would not have thought it prudent to object to its application or seek a role reduction.  And her attorney at sentencing did in fact seek a sentence below her guidelines range, albeit not based on a request for a role reduction.  Boardwine has not met her burden of proving that her counsel committed any unprofessional error.

Moreover, based on the contents of the plea agreement and her statements under oath at the change of plea hearing, had her counsel sought such a reduction, I would have denied it.  Despite her counsel's request for a below-guidelines sentence of 120 months, I sentenced Boardwine at the high end of her guidelines range.  Even

if the parties had not agreed to organizer or leader enhancement, I would have found that it applied and would have given her the same lengthy sentence.  I found, and still find, that a sentence of 168 months was sufficient but not greater than necessary to comply with the required purposes.  Therefore, Boardwine has failed to establish prejudice as required by *Strickland*.

For these reasons, the United States' motion to dismiss, ECF No. 173, will be granted and the § 2255 motion, ECF Nos. 149, 151, will be dismissed.  A separate final order will be entered herewith.

ENTER:  April 26, 2021

/s/  JAMES P. JONES
United States District Judge